IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN FRANCIS GLATTS, III, | : | CIVIL ACTION |
| | : | NO. 09-2201 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CROZER-KEYSTONE HEALTH SYS. | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    AUGUST 18, 2009

I.    BACKGROUND

        Plaintiff John Francis Glatts, III ("Plaintiff")
initiated this putative class action lawsuit against Defendants
Crozer-Keystone Health System and Crozer-Chester Medical Center
("Defendants") in the Court of Common Pleas of Philadelphia
County.  Plaintiff, a full-time employee of Crozer-Chester
Medical Center, purports to bring this action on behalf of "[a]ll
Pennsylvania residents who worked for entities owned or operated
by Crozer-Keystone Health System from April 15, 2006 to the
present, and who were subjected to Defendants' practice of
calculating and awarding overtime premium pay based on a work
period of fourteen (rather than seven) consecutive days."
(Compl. ¶¶ 1, 5, doc. no. 2, Ex. A.)  In essence, Plaintiff
alleges that this practice violates the Pennsylvania Minimum Wage

Act of 1968, 43 P.S. §§ 333.101, <u>et seq.</u> ("MWA").[1]

On May 18, 2009, Defendants removed this action to federal court based on 28 U.S.C. §§ 1441, 1446 and 1331. Defendants argue that Plaintiff's state law claim is preempted by § 301 of the Labor Management Relations Act ("LMRA") and that this Court has original jurisdiction.

On June 17, 2009, Plaintiff filed a motion to remand this case back to the Court of Common Pleas of Philadelphia County.  The Court heard oral argument on Plaintiff's motion on July 21, 2009.  Now, for the reasons that follow, Plaintiff's motion will be granted.[2]


II.  LEGAL STANDARD

Section 301 of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having

---

[1]     Initially, Plaintiff also averred a violation of the Pennsylvania Wage Payment and Collection Law ("WPCL").  This claim, however, was voluntarily dismissed with prejudice on July 21, 2009, and is no longer before the Court (doc. no. 21).

[2]     On July 1, 2009, Defendants moved to join the Crozer-Chester Nurses Association/Pennsylvania Association of Staff Nurses and Allied Health Professionals (Plaintiff's union), pursuant to Fed. R. Civ. P. 19(a)(2).  Because this Court does not have jurisdiction over Plaintiff's claim, Defendants' motion for joinder will be denied as moot.

jurisdiction of the parties."  29 U.S.C. § 185(a).

The determination of whether a plaintiff's state-law claim is preempted by Section 301 necessarily implicates principles of federalism.  Indeed, the Supreme Court has directed courts to "sustain a local regulation 'unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.'"  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985) (quoting Malone v. White Motor Corp., 435 U.S. 497, 504 (1978)); see also id. ("In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").

To assist courts in this inquiry, the Supreme Court has developed a substantial body of jurisprudence, which limits the otherwise sweeping preemptive force of Section 301.  See Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 23 (1983) (noting that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.  Any such suit is purely a creature of federal law, notwithstanding the fact that state law

- 3 -

would provide a cause of action in the absence of § 301")
(internal quotation omitted).

Indeed, it is well settled that "when the meaning of
contract terms is not the subject of dispute, the bare fact that
a collective-bargaining agreement will be consulted in the course
of state-law litigation plainly does not require the claim to be
extinguished." Livdas v. Bradshaw, 512 U.S. 107, 124 (1994).
Rather, "an application of state law is pre-empted by § 301 of
the Labor Management Relations Act of 1947 only if such
application requires the interpretation of a collective-
bargaining agreement." Lingle v. Norge Division of Magic Chef,
Inc., 486 U.S. 399, 413 (1988); see also id. at 409 ("§ 301
preemption merely ensures that federal law will be the basis for
interpreting collective-bargaining agreements, and says nothing
about the substantive rights a State may provide to workers when
adjudication of those rights does not depend upon the
interpretation of such agreements"); Lueck, 471 U.S. at 220
(holding that a state-law claim that is "substantially dependent
upon analysis of the terms of an agreement made between the
parties in a labor contract" will be preempted by § 301); Kline
v. Security Guards Inc., 386 F.3d 246, 256 (3d Cir. 2004) ("[T]he
dispositive question here is whether . . . [the] state claims
require any interpretation of a provision of the CBA.").

Moreover, under certain circumstances, the preemption

- 4 -

of a state-law claim by Section 301 will not confer a basis for
federal jurisdiction.  For example, where a defendant raises a
defense that requires a court to interpret or apply a collective-
bargaining agreement, federal jurisdiction may not be proper.
The Supreme Court has put it this way:

> It is true that when a defense to a state claim is
> based on the terms of a collective-bargaining
> agreement, the state court will have to interpret that
> agreement to decide whether the state claim survives.
> But the presence of a federal question, even a § 301
> question, in a defensive argument does not overcome the
> paramount policies embodied in the well-pleaded
> complaint rule - that the plaintiff is the master of
> the complaint, that a federal question must appear on
> the face of the complaint, and that the plaintiff may,
> by eschewing claims based on federal law, choose to
> have the cause heard in state court.  When a plaintiff
> invokes a right created by a collective-bargaining
> agreement, the plaintiff has <u>chosen</u> to plead what we
> have held must be regarded as a federal claim, and
> removal is at the defendant's option.  But a <u>defendant</u>
> cannot, merely by injecting a federal question into an
> action that asserts what is plainly a state-law claim,
> transform the action into one arising under federal
> law, thereby selecting the forum in which the claim
> shall be litigated.

<u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 398-99 (1987); <u>see
also</u> <u>Antol v. Esposto</u>, 100 F.3d 1111, 1117 (3d Cir. 1997) ("[T]he
'well-pleaded complaint' rule prevents removal to federal court
if a plaintiff chooses to present only a state law claim and
preemption is raised solely as a defense. . . . Although
preemption may be a valid defense, jurisdiction remains with the
state court.") (internal citation omitted).

III. DISCUSSION

The parties do not dispute that Plaintiff is a member of a collective bargaining unit and is subject to a collective bargaining agreement ("CBA").  The CBA provides, in relevant part, that "Employees will be paid time and one-half of their regular hourly rate of pay for all authorized hours worked in excess if eighty (80) hours in two (2) weeks or in excess of eight (8) hours per day for employees on eight (8) hour shifts." (Defs.' Opp. Ex. 2 Art. 8, doc. no. 17.)

In support of remand, Plaintiff argues that his claim relies upon a violation of state law and that § 301 preemption is not appropriate in this instance because his claim under the MWA does not require "interpretation" of the CBA.

Specifically, Plaintiff argues that his claim turns on "whether Defendants' overtime pay system comports with the 'workweek' definition in Pennsylvania law which, in turn, depends on an interpretation of the MWA and its enabling regulations. . . . Whether Defendants' overtime pay system is allowed under the CBA is irrelevant to whether that system violated the MWA." (Pl.'s Mot. to Remand at 7, doc. no. 13.)  Plaintiff points to the plain language of 34 Pa. Code §§ 231.41-42.  34 Pa. Code § 231.41 provides that an employer shall pay overtime at the rate of 1-1/2 times the employee's regular rate of pay "for all hours in excess of 40 hours in a workweek" and 34 Pa. Code § 231.42

defines "workweek" as a period of 7 consecutive days starting in any day selected by the employer."  According to Plaintiff, a Court need only interpret these two provisions, and not the CBA, to adjudicate his claim.

Defendants counter that to determine the merits of Plaintiff's claim, the Court would be required to "interpret the overtime and wage payment policy in its totality to determine if it violates state law." (Defs.' Opp. at 11, doc. no. 17.)  For example, Defendants cite to provisions of the CBA that govern the calculation of overtime during legal holidays, and the calculation of overtime undertaken voluntarily.  (See id. at 4.) Defendants argue that the Court cannot determine "whether Defendants violated the MWA . . . by failing to pay overtime wages to Plaintiff and the Class members on their regular paydays" without interpreting these provisions.  (See Compl. ¶ 11.b, doc. no. 2, Ex. A.)

The Court agrees with Plaintiff's contention.  Here, to analyze Plaintiff's claim, the Court will need to determine whether Defendants' formula for calculating overtime pay based on an eighty hour, fourteen day workweek violates the MWA.  This is in no way dependent upon the Court's interpretation of a provision of the CBA.  Lividas, 512 U.S. at 124.  In fact, both parties agree that Defendants' calculation of overtime pay based on an eighty hour, fourteen day workweek is expressly permitted

by the CBA.

The cases cited by Defendants are distinguishable and not helpful to Defendants' position.  First, Defendants rely upon the decision from within this district, in Townsend v. BC Natural Chicken LLC, No. 06-4317, 2007 WL 442386, at *5 (E.D. Pa. Feb. 2, 2007).  (See Defs.' Opp. at 12, doc. no. 17.)  The Townsend court considered whether § 301 preempted plaintiffs' MWA claim for unpaid overtime wages for time spent "'donning' and 'doffing' personal protective equipment."  Townsend, 2007 WL 442386 at *1.  Because the court concluded that "determining whether Plaintiffs' claim that time spent 'donning and doffing' represents hours worked is a matter of interpretation of the CBA," it held that plaintiffs' MWA claim was preempted by § 301.  Id. at *5.

Defendants also rely upon the Third Circuit's decision in Pa. Fed'n of the Bhd. of Main. of Way Employees v. Nat'l R.R. Passenger Corp. ("Way Employees"), 989 F. 2d 112, 115-16 (3d Cir. 1993).  In Way Employees, the Third Circuit found that it was "impossible" to evaluate whether the "time spent traveling back to [AMTRAK's] camp cars or headquarters" was "'part of the duties of the employe[e]'" without interpreting the CBA "to see exactly what the duties of the employees are."  Id. (quoting district court).  Under these circumstances, the Third Circuit affirmed that plaintiffs' MWA claim was within the exclusive jurisdiction of the National Railroad Adjustment Board.  Id.  Upon close

- 8 -

examination, the Court concludes that Defendants' reliance on these cases is misplaced.

Unlike the instant case, the plaintiffs in both Townsend and Way Employees challenged their employers' method of calculating overtime pay based on their contention that specific conduct or duties (i.e., donning and doffing, travel) were improperly excluded from plaintiffs' compensable wages. Here, by contrast, Plaintiff does not allege that Defendants' violated the MWA by failing to pay him overtime wages for the performance of certain duties.[3] Rather, Plaintiff challenges the legality of Defendants' formula for calculating overtime pay based on an eighty hour, fourteen day workweek, under Pennsylvania state law. Thus, the resolution of Plaintiff's claim requires an analysis of Pennsylvania state law, not the CBA.

Second, Defendants contend that, pursuant to 34 Pa. Code § 231.43(7)(c), their calculation of overtime pay based on a work period of fourteen, rather than seven, consecutive days is proper. 34 Pa. Code § 231.43(7)(c) provides that "No employer may be deemed to have violated these §§ 231.41--231.43 (relating to overtime pay) by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 (relating to rate) if the employee is employed under a

---

[3]     Indeed, it is not even clear from Plaintiff's complaint what position he holds at Crozer-Chester Medical Center.

bona fide individual contract or <u>under an agreement made as a</u>
<u>result of collective bargaining by representatives of employees</u>,
if the duties of the employee necessitate substantially irregular
hours of work."  <u>Id.</u> (emphasis added).[4]  Defendants argue that
Plaintiff's MWA claim is preempted because "the Court will be
required to interpret the CBA to determine whether an agreement
as permitted by Section 231.43(c) occurred."

     In support of this argument, Defendants rely upon
<u>Firestone v. S. Cal. Gas Co.</u>, 219 F.3d 1063, 1066 (9th Cir.
1993).  The <u>Firestone</u> court found that plaintiffs' claim
challenging the calculation of overtime wages under California
law was preempted by § 301 of the LMRA where the parties
disagreed as to the meaning of the term "regular rate" under the
applicable CBA.  <u>Id.</u>  Again, Defendants' reliance is misplaced.
While an overtime exemption provision similar to § 231.43(7)(c)
is mentioned by the <u>Firestone</u> court, the exemption provision is
neither essential to its holdings nor part of its analysis.
Rather, the <u>Firestone</u> court plainly found that plaintiffs' claim
under California state law was preempted because "[t]he parties .
. . disagree on the meaning of terms in the collective bargaining

---

[4]    Such an exception may be justified where, for example,
"neither the employee nor the employer can either control or
anticipate with a degree of certainty the number of hours the
employee must work from week to week, where the duties of the
employee necessitate significant variations in weekly hours of
work both below and above the statutory weekly limit on
nonovertime hours."  34 Pa. Code § 231.43(7)(c).

agreement for purposes of California law."  Id.; see also
Lividas, 512 U.S. at 124.

     Here, the parties disagree as to the legality of the
overtime provisions of the CBA under Pennsylvania law, not the
meaning of these provisions under the CBA.  In fact, there is no
disagreement that, under the terms of the CBA, Plaintiff's claim
would have no merit, as the CBA expressly authorizes Defendants'
calculation of overtime pay based on an eighty hour, fourteen day
workweek.[5]

     Third, Defendants argue that "courts uniformly find
claims challenging the legality of CBA provisions are preempted
by § 301 of the LMRA."  (7/27/09 letter from E. Mazurek to the
Court at 4.)  See, e.g., Vera v. Saks & Co., 335 F.3d 109, 115-16
(2d Cir. 2003) (finding that plaintiff's state law claim was
preempted where "plaintiff's challenge to the lawfulness of a
term of the CBA will require substantial interpretation of the
CBA"); Medrano v. Excel Corp., 985 F.2d 230, 234 (5th Cir. 1993)
(finding that plaintiff's claim was "without a doubt . . .
substantially dependent upon the meaning of a term of the CBA"
where he "was essentially challenging the very legality of

_____

     [5]     Furthermore, to the extent Defendants raise the
application of § 231.43(7)(c) as a defense to Plaintiff's MWA
claim, any interpretation of the CBA required to assess this
defense would not confer jurisdiction on this court.  See
Caterpillar Inc., 482 U.S. at 398-99; see also Antol, 100 F.3d at
1117.

Article XVII, Section 11(F), of the CBA"); <u>Dunlap v. Fred Meyer Stores, Inc.</u>, No. 04-CV-950-BR, 2006 WL 2901841, at *7 (D. Or. Oct. 5, 2006) (finding that, where plaintiff challenged the legality of a CBA provision, plaintiff's claim required the Court to construe the CBA).

Upon close examination, it cannot be said that these cases stand for the broad proposition urged on the Court by Defendants.  (7/27/09 letter from E. Mazurek to the Court at 2.) In fact, in each of these cases, the plaintiffs' state-law claims were preempted by § 301 only after the reviewing court concluded that the resolution of these claims required it to interpret the meaning of a provision of the CBA.  <u>See</u> <u>Vera</u>, 335 F.3d at 115 (finding that "we must interpret the CBA to determine whether it embodies an agreement between the parties to alter the common law rule regarding when commissions are earned"); <u>Medrano</u>, 985 F.2d at 234 (noting that plaintiff's witnesses had testified at length about the terms of the CBA and that plaintiff "was not challenging the actions of his employers under [state law]; instead he was challenging a provision of the CBA that was applied by his employer"); <u>Dunlap</u>, 2006 WL 2901841 at *7 ("Plaintiff challenges the legality of § 4.10(f) of the CBA, <u>and</u>, as in <u>Medrano</u>, the Court cannot resolve Plaintiff's claim without construing the CBA." (emphasis added)).  Thus, these cases may stand simply for the unremarkable proposition that "an

- 12 -

application of state law is pre-empted by § 301 of the Labor
Management Relations Act of 1947 only if such application
requires the interpretation of a collective-bargaining
agreement." <u>Lingle</u>, 486 U.S. at 413.[6]


IV.  CONCLUSION

        For all of these reasons, Plaintiff's motion to remand
will be granted and this case will be remanded to the Court of
Common Pleas of Philadelphia County.  Additionally, Defendants'
motion for joinder will be denied as moot as this Court does not
have jurisdiction in this matter.  An appropriate order follows.

---

        [6]    In any event, Defendants' broad proposition that "a
claim challenging the legality of a provision of a CBA is
preempted by § 301," reaches too far.  See Lueck, 471 U.S. at 220
(noting that "[t]he full scope of the pre-emptive effect of
federal labor-contract law" must be "fleshed out on a case-by-
case basis").